SOUTHERN DISTRICT OF MISSISSIPPI
**FILED**

AUG 29 2014

ARTHUR JOHNSTON
BY_____ DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

PSYCAMORE L.L.C.

PLAINTIFF

**VERSUS**                          CIVIL ACTION NO.: 1:14cv336LG-RHW

THE CITY OF OCEAN SPRINGS,
MISSISSIPPI

DEFENDANT

## COMPLAINT

### JURY TRIAL REQUESTED

Comes now, PSYCAMORE, L.L.C., a Mississippi Limited Liability Company, by and through its attorneys, Rushing & Guice, P.L.L.C., and in support of its good cause of action, would state unto the Court and give notice of the following, to-wit:

### PARTIES

The parties to this lawsuit are: Psycamore, L.L.C. and the City of Ocean Springs, Mississippi.

1.

Psycamore, L.L.C. is a Mississippi Limited Liability Company, organized and existing pursuant to the laws of the State of Mississippi, having its principal place of business at 2540 Flowood Drive, Suite A, Flowood, Mississippi 39232. At all times mentioned herein, Psycamore, L.L.C. [hereinafter referred to as "Psycamore"] may sue in its own name and capacity.

RUSHING & GUICE, P.L.L.C.
ATTORNEYS AT LAW
P.O. BOX 1925
BILOXI, MS 39533-1925

228 374-2313

Page **1** of **29**

2.

Defendant, City of Ocean Springs, Mississippi [hereinafter referred to as "Ocean Springs"] is a municipal corporation and may be served by delivering a copy of the Summons and Complaint to either the mayor or the municipal clerk.

## JURIDICTION AND VENUE

3.

Jurisdiction is based upon the existence of a federal question pursuant to 28 U.S.C.§1331.

4.

Venue is located in the Southern Division of the Southern District of Mississippi, as this is the division and district in which the cause of action accrued and in which Ocean Springs may be found.

## STATEMENT OF FACTS

5.

Psycamore entered into a lease for property located at 1101 Iberville Drive in Ocean Springs, Mississippi [hereinafter referred to as "Iberville Drive"] for the purpose of operating an outpatient/day treatment ambulatory behavioral healthcare facility.  The facility provided an active treatment program offering therapeutically intensive, coordinated and structured clinical services within a stable therapeutic environment.  Psycamore's facility was not a hospital because it did not provide comprehensive health services.   It was an alternative to hospitalization.  It was a facility for the treatment of human patients and thus was clearly permitted within the zoning ordinances of Ocean Springs.

RUSHING & GUICE, P.L.L.C.
ATTORNEYS AT LAW
P.O. BOX 1925
BILOXI, MS 39533-1925

228 374-2313

Page **2** of 29

6.

Iberville Drive is located in a C-3 Highway Commercial District which district is defined in the Zoning Ordinance of Ocean Springs. More specifically, the applicable language is found in those provisions of the Zoning Ordinance which speak to C-3 and C-1 districts. The definition of a C-3 highway commercial district is set forth in the Zoning Ordinance of Ocean Springs, Article IV, Section 408.2, Uses permitted, subsection (2) which lists laboratory, dental and medical as permitted uses. The definition of medical and dental facilities set forth in Article II, Section 202 of the Zoning Ordinance of the City of Ocean Springs:

Medical and dental facilities:

a) Convalescent, rest or nursing home: a health facility where persons are housed and furnished with medical and/or nursing care.

b) Medical or paramedical offices: a facility for the examination and treatment if human patients.

c) Hospital: an institution providing comprehensive health services.

d) Public Health Center: a facility primarily utilized by a health unit for the provisions of public health services.

7.

In addition, subsection (2) also lists any uses permitted in a C-2 community commercial district. Section 407.2 speaks to a C-2 district. Uses permitted lists any commercial use permitted in the C-1 neighborhood commercial district. Section 406 which speaks to C-1, expressly lists in subsection 406.2(9)(a), Medical or paramedical practices or clinics licensed by the State of Mississippi for human care, the definition of which is provided above.

RUSHING & GUICE, P.L.L.C.
ATTORNEYS AT LAW
P.O. BOX 1925
BILOXI, MS 39533-1925

228 374-2313

Page **3** of **29**

8.

Pursuant to the aforementioned sections of Ocean Spring's zoning ordinance, there were at the time, located within Ocean Springs, within C-3 zoning districts, no less than thirty (30) medical and dental offices, many of which regularly engaged on a daily basis in invasive medical procedures such as the administration of anesthesia, outpatient surgery, laser surgery, injections, x-rays, etc. Each of these existing medical and dental offices were granted certificates of occupancy without being subjected to the same level of intense scrutiny as Psycamore.

9.

After investing significant monetary resources in Iberville Drive, on August 30, 2011, Psycamore filed an Occupancy Inspection Request form with Ocean Springs wherein Psycamore requested that the proposed business, Psycamore, L.L.C., identified as a Psychiatric Partial Hospitalization facility, be inspected at its location within a C-3 zoning classification and issued a Certificate of Occupancy.

10.

It was about this time that certain individuals calling themselves "Friends of Iberville Drive," began circulating a flier which depicted Psycamore's clinic as the psychiatric ward in the 1975 film, One Flew Over the Cuckoo's Nest.

11.

Despite the fact that Psycamore was not seeking a zoning change or zoning variance and despite the fact that Psycamore's business fell squarely within the permitted uses as set forth in Ocean Springs' C-3 district, and likewise Ocean Springs' C-2 and C-1 districts, the requested Certificate of Occupancy was not issued to Psycamore and instead, in an unprecedented move, the matter was put on the Agenda of Ocean Springs' September 6, 2011 City Council Meeting

RUSHING & GUICE, P.L.L.C.
ATTORNEYS AT LAW
P.O. BOX 1925
BILOXI, MS 39533-1925

228-374-2313

Page **4** of **29**

resulting in a referral to the Planning Commission wherein it was described as a C-3 zoning issue.

12.

Prior to the Planning Commission meeting, a memorandum was generated by Ocean Springs' Planning Department to establish Ocean Springs' prior interpretation and application of the applicable zoning ordinance, which memorandum contained a partial listing of existing psychological offices and their locations in C-2, C-3 and R-1 zones.

13.

Although public safety issues are not pertinent to matters of ordinance interpretation, on September 7 and September 8, 2011, Mayor Connie Moran [hereinafter referred to as "Moran"], in an effort to quell the concerns of a few citizens, corresponded with Greg Davis, Mayor of Southaven, Mississippi, regarding Psycamore's facility located in his city. Mayor Davis advised Moran that they there had been no complaints from neighbors or the surrounding business concerning Psycamore's operation or their clientele. Mayor Davis stated that to his knowledge they appeared to operate very similar to any other medical office in his city. Mark Dunston, Deputy Chief of the Ocean Springs Police Department, confirmed in an email to Moran dated September 7, 2011, his conversation with the police Chief of Southaven which revealed that there had been no calls regarding Psycamore other than alarm calls.

14.

On September 9, 2011, Eric Meyer, Ocean Springs' Planning Director, [hereinafter referred to as "Meyer"], emailed his preliminary report regarding Psycamore to Moran and to the members of the Planning Commission. This report expressed Meyer's opinion that the vast majority of Ocean Springs' medical offices and clinics were located in C-3 zoning districts, that

RUSHING & GUICE, P.L.L.C.
ATTORNEYS AT LAW
P.O. BOX 1925
BILOXI, MS 39533-1925
228 374-2313

Page **5** of **29**

his research did not find a single city that specifically listed psychological or psychiatric services in their zoning code much less differentiate between types of psychiatric services, that partial hospitalization means an outpatient program, confirmed the comments of Southaven Mayor Davis, and dispelled all public safety concerns via information supplied by Ocean Springs' Deputy Police Chief, Mark Dunston.  A supporting email from Mark Dunston to Meyer which supports the statements made by Meyer in his Memorandum was also made a part of the record.

15.

Psycamore was forced to participate in a public hearing before the Planning Commission on September 13, 2011 wherein the issuance of the Certificate of Occupancy to Psycamore was placed on the meeting agenda.

16.

On September 12, 2011, William Lee Guice III with Rushing & Guice, PLLC [hereinafter referred to as "Guice"] via letter to Ocean Springs' attorney John B. Edwards, II [hereinafter referred to as "Edwards"] submitted a position paper to Ocean Springs.  This letter reiterated to Ocean Springs that Psycamore's facility was not a hospital and included a lengthy discussion on the definition of Acute Partial Hospitalization. The letter also pointed out that Psycamore's intended use for the subject property fell squarely within the definition of a C-3 highway commercial district as set forth in Ocean Springs' zoning ordinance, that no legal basis existed for objection, that Psycamore's record with the Mississippi Department of Mental Health contained no complaints, that Ocean Springs' refusal to allow Psycamore to open its psychiatric treatment facility on Iberville Drive was a clear violation of Title II of the Americans With Disabilities Act as the administration of zoning laws is a service, program, or activity within the meaning of the statute and that Ocean Springs would be subject to suit from both Psycamore and

RUSHING & GUICE, P.L.L.C.
ATTORNEYS AT LAW
P.O. BOX 1925
BILOXI, MS 39533-1925
228 374-2313

Page **6** of 29

the United States Department of Justice for violating same and that there was no authority for the proposition that mental health facilities cause an increase in crime or affect property values.

17.

At the September 13, 2011 Planning Commission meeting, Psycamore submitted a package of documentation in support of its position. Psycamore was denied a Certificate of Occupancy. Mary Marr Beckman [hereinafter referred to as "Beckman"], a local real estate agent and member of the Planning Commission, failed to disclose at this meeting that she had a listing on a residential property next door to Iberville Drive and therefore had a financial interest in the outcome. Additionally, Beckman continuously referred to Psycamore as "Psycho-more" throughout the meeting.

18.

On September 15, 2011, Guice via letter to Edwards, advised Ocean Springs that Beckman was the listing agent for a home located at 1111 Iberville Drive, that Beckman had a financial interest in the outcome of the granting or denial of a certificate of occupancy to Psycamore and that this fact should have been disclosed prior to the Planning Commission meeting on September 13, 2011. A copy of Beckman's flier evidencing a sales price of $799,000.00 was included with the letter. Demand was made upon Ocean Springs as follows: The process has been tainted. Psycamore, LLC can neither be assured that a fair and impartial discussion can be reached nor that there had not been off the record discussions. I respectfully request that the Planning Commission not report to the City Council and that the Planning Commission advise the City Council it is no longer in a position to make a recommendation and it would be improper to do so.

RUSHING & GUICE, P.L.L.C.
ATTORNEYS AT LAW
P.O. BOX 1925
BILOXI, MS 39533-1925

228 374-2313

Page **7** of **29**

Psycamore, LLC, which is the subject of the proposed Certificate of Occupancy, is not being afforded complete and impartial treatment.   From the discussion of the Planning Commission, the wrong standards were being applied.   There is no reasonable basis for the denial of the Certificate of Occupancy; there is no legal basis for the process which Psycamore, LLC is being forced to endure to its damage.

19.

On September 19, 2011, Ocean Springs through its attorney, Edwards, advised in a letter to Guice that in direct conflict with prior established interpretation of the ordinance in issue, a certificate of occupancy would not be issued to Psycamore because the use Psychiatric Partial Hospitalization was not specifically permitted in Section 408.2 of Ocean Springs' zoning ordinances. Ocean Springs had never required such specificity before. Ocean Springs requested that Psycamore submit a Use Permit Application to Ocean Springs.

20.

On September 22, 2011, Ocean Springs in a letter from Edwards, instructed Psycamore to obtain a temporary occupancy permit until the use permit process was completed.

21.

On September 23, 2011, Psycamore in a letter from Guice to Edwards, advised Ocean Springs that the Use Permit Application would be filed by Psycamore under protest, that no other medical or psychiatric offices located in C-3 zones were forced to undergo such a procedure, and that to single out Psycamore because it treats patients with psychiatric or emotional disorders constitutes a violation of the Americans with Disabilities Act and is discriminating in its effect. Psycamore also restated its position with regard to Beckman participating in any meeting

RUSHING & GUICE, P.L.L.C.
ATTORNEYS AT LAW
P.O. BOX 1925
BILOXI, MS 39533-1925

228 374-2313

Page **8** of **29**

involving Psycamore and cited to several Mississippi Ethics Opinions. Demand was made upon

Ocean Springs as follows:

> I respectfully request that Eric Meyer rescind his decision and a Certificate of
> Occupancy be issued.  Secondarily, I respectfully request that Ms. Mary Marr
> Beckman withdraw from any participation with this matter with the Planning
> Commission as same would   involve Psycamore and not participate in any
> manner, not be present in the room in any manner, and the minutes clearly so
> reflect.  Likewise, I respectfully request that Ms. Beckman disclose each person
> on the Planning Commission with whom she has had conversations concerning
> Psycamore in any way, that each member of the Planning Commission search
> their memories and recollection to determine if they had conversations with Ms.
> Beckman and if so, that each such member withdraw from   participation in this
> decision.

22.

On September 22, 2011, under protest, Psycamore submitted a Use Permit Application to

Ocean Springs.

23.

The Planning Commission issued a Public Notice for a hearing to be held on October 25,

2011, the Public Notice specifically stating:

> The Planning Commission shall consider the application of Dr. Sudhakar
> Madakasira representing Psycamore, LLC requesting a Use Permit to operate an
> outpatient psychiatric program providing partial hospitalization and intensive
> outpatient therapy to   mentally ill patients who are high functioning, needing a
> serene, private, homelike setting to facilitate their recovery within the C-3
> Commercial Highway zoning designation for the parcel addressed as 1101
> Iberville Drive with parcel identification number 60119164.000.

24.

On October 19, 2011, Edwards requested that Psycamore present its arguments in a

narrative letter to the Planning Commission prior to the October 25, 2011 hearing.

RUSHING & GUICE, P.L.L.C.
ATTORNEYS AT LAW
P.O. BOX 1925
BILOXI, MS 39533-1925

228 374-2313

Page **9** of 29

25.

On October 24, 2011, Guice advised Ocean Springs via letter to Edwards that the mere fact of the Planning Commission meeting taking place would create liability on the part of Ocean Springs under various federal statutes including the Americans with Disabilities Act, the Rehabilitation Act, the Equal Protection Clause of the Fourteenth Amendment and the Civil Rights Act. Psycamore made demand upon Ocean Springs that the hearing be cancelled and a permanent Certificate of Occupancy be immediately issued by the administration to Psycamore as this was an administrative function of the Mayor's office and not a function of the Board of Aldermen. Prior to the October 25, 2011 Planning Commission hearing, the Community Development and Planning Department of Ocean Springs at the direction of Meyer and with the assistance of legal counsel prepared an eight page Planning Commission Report which concluded that Psycamore's business was a legal use with the C-3 district and which made the following Recommendation:

> Due to community interest in the matter, the Community Development and Planning Department felt the proposed Psycamore psychiatric facility warranted additional research and scrutiny.
>
> After extensive research and legal counsel, the Community Development and Planning Department recommends that the Planning Commission find Psycamore to be a legal use within the C-3 Highway Commercial zoning district. Consequently, a Use Permit is unnecessary.
>
> Should the Planning Commission determine after a finding of facts during the course of the public hearing that a Use Permit for Psycamore remains necessary, the Planning Commission must determine whether the requested use is similar to or not in conflict with those uses specifically allowed in C-3 Highway Commercial as detailed above (the code indicates that the use does not have to be both, but either similar to or not in conflict with).
>
> Historically, the City of Ocean Springs has allowed all forms of medical offices and clinics to operate in all commercial districts except C-4B, Commercial Limited Marina. With this in mind, the Community Development and Planning Department views Psycamore as a medical clinic consistent with the City of

RUSHING & GUICE, P.L.L.C.
ATTORNEYS AT LAW
P.O. BOX 1925
BILOXI, MS 39533-1925
—
228 374-2313

Ocean Springs' zoning ordinances and historical application. Furthermore, the Community Development and Planning Department finds that Psycamore's requested use is similar to and not in conflict with those uses specifically allowed in C-3 Highway Commercial.

Concerning perceived negative impacts of the proposed use, the Community Development and Planning Department finds no research to suggest that a psychiatric office or clinic of the proposed size and nature would have detrimental impacts on property values or public safety. As such, the Community Development and Planning Department finds no reason to apply more stringent site plan standards such as is the case with lounges, sexually oriented business, or liquor stores.

26.

On October 24, 2011, Guice on behalf of Psycamore, advised Ocean Springs via letter to Meyer of its position. Psycamore once again advised that a Use Permit was not necessary as Psycamore's use was specifically allowed in accordance with a plain reading of the ordinance, that this was not an issue of statutory interpretation and that there existed no legitimate basis for proceeding with a hearing on the issue. Ocean Springs was further advised that it was bound to follow the recommendation of the Community Development and Planning Department derived with the assistance of legal counsel as set forth in the Planning Commission Report:

After extensive research and legal counsel, the Community Development and Planning Department recommends that the Planning Commission find Psycamore to be a legal use within the C-3 Highway Commercial zoning district. Consequently a Use Permit is unnecessary.

Psycamore again reminded Ocean Springs that its actions constituted violations of the Americans with Disabilities Act, the Rehabilitation Act, the Equal Protection Clause of the Fourteenth Amendment and the Civil Rights Act. Psycamore also commented on the issue of ordinance interpretation and reminded Ocean Springs that it was bound, in accordance with Mississippi law, to both interpret and apply the ordinance in issue as it has in the past and that to do otherwise would be to engage in activity which was arbitrary, capricious and discriminatory.

RUSHING & GUICE, P.L.L.C.
ATTORNEYS AT LAW
P.O. BOX 1925
BILOXI, MS 39533-1925
228-374-2313

Page 11 of 29

Psycamore expressly identified several medical offices currently located in C-3 districts and which were not subjected to the same level of excessive scrutiny by Ocean Springs. Psycamore summed up Ocean Springs' motivation thus far in the process as a sham, the only purpose of which was to allow Ocean Springs to support the illegal and discriminatory actions of certain of its residents and city officials.

27.

On October 25, 2011, Meyer supplemented the aforementioned Planning Commission Report with a memorandum addressed to the Planning Commission. This memorandum listed twenty-six (26) medical clinics currently operating within a C-3 district and further advised the Planning Commission that the Department of Community Development and Planning did not require any of these businesses to obtain a use permit prior to operation. The memorandum also stated:

> As Psycamore will operate as an out-patient medical clinic, it would never be considered as a hospital. Also, Psycamore is a focused medical practice, not a comprehensive medical facility like a hospital. Psycamore's patient visitation pattern is more akin to a physical therapist medical clinic than a hospital.

28.

At the October 25, 2011 Planning Commission meeting, the members voted twice, both votes resulting in a 3-3 tie. Beckman abstained from voting on the issue but did not remove herself from the meeting or disclose the identity of each person on the Planning Commission with whom she had conversations concerning Psycamore. The Planning Commission decided not to make a recommendation to the City Council.

29.

On October 27, 2011, Meyer submitted a 10 page report to Moran and the Board of Alderman of Ocean Springs regarding the Use Permit application of Psycamore. This report

RUSHING & GUICE, P.L.L.C.
ATTORNEYS AT LAW
P.O. BOX 1925
BILOXI, MS 39533-1925

228 374-2313

Page **12** of 29

contained an updated list of medical clinics currently operating within a C-3 district to include thirty (30) such facilities, and once again advised Ocean Springs that it did not require any of these businesses to obtain a use permit prior to operation thereby triggering the similar to or not in conflict with analysis. The report further pointed out that Ocean Springs has several psychiatry and psychology clinics in town and also referenced two additional clinics, one located in R-1 Single Family and one located in C-2 Community Commercial.

30.

During this time, Psycamore pointed out to Ocean Springs that Singing River Health System/Behavioral Health System was operating a Structured Outpatient Program in a C-3 district which provided services strikingly similar if not identical to those provided by Psycamore as stated in its brochure:

> The Behavioral Health Structured Outpatient Program is a medically supervised program tailored to meet the individual needs of adult patients requiring intense behavioral support, but who do not need the acute treatment of an inpatient psychiatric facility. It is a less costly, less restrictive and more flexible alternative to full hospitalization, but offers a more structured and intense treatment program than periodic outpatient therapy. The program provides behavioral health treatment to patients who are able to remain in the   community but require daily support and stabilization. It also serves as an important transitional resource between discharge from inpatient care and reintegration to full community life.

Singing River Health System was not subjected to the same scrutiny as Psycamore.  A Certificate of Occupancy was issued to Singing River Health System despite the fact that a Behavioral Health Structured Outpatient Program was not specifically described in Ocean Springs' zoning ordinance.

31.

A September 6, 2011, report added Applied Psychology Center (C-2), Gulfshore Medical Consultants (C-3), Dr. Bruce Dennings (C-3) and Gulf Coast Family Counseling (R-1) to the list.

RUSHING & GUICE, P.L.L.C.
ATTORNEYS AT LAW
P.O. BOX 1925
BILOXI, MS 39533-1925
——
228 374-2313

Page **13** of 29

32.

Ocean Springs held a City Council meeting on November 1, 2011, wherein the Use Permit Application of Psycamore was placed on the Agenda. A list of all of the documents submitted by the parties can be found in the official record. On this list is the Planning Commission Report dated September 22, 2011, wherein the applicable zoning ordinances were listed, the opposition's claims of reduced property values, public safety concerns and proximity to a hospital, although not relevant to the issue, were dispelled and authority either cited and/or attached, and recommendations were made, the most important of which was the finding that Psycamore's proposed use was similar to and not in conflict with those uses specifically allowed in a C-3 Highway Commercial district. Also listed is an email from Ann Dillemuth with the American Planning Association to Meyer dated September 14, 2011 wherein Ms. Dillemuth stated, "Though the exact wording varies from place to place, the key difference between clinics and hospitals is that clinics provide medical services on an outpatient basis only, while hospitals, though they might include outpatient facilities, primarily offer inpatient (overnight) medical care. As Psycamore provides only day and evening therapies for highly functional psychiatric patients, and does not offer overnight or residential care services, it would seem to fit the definition of clinic more closely." Petitions from physicians and citizens in support of Psycamore and the rights of the mentally ill were also submitted bearing over 300 signatures. This petition contained the following statement:

> We the undersigned request that the city of Ocean Springs, MS issue Psycamore Psychiatric Programs a certificate of occupancy (COO) for its legally appropriate location in the commercially zoned property at 1101 Iberville Drive, Ocean Springs, MS 39564.
>
> Reasons: To deny COO saying it is a psychiatric or mental@ facility is an injustice based on prejudice and discrimination toward the mentally ill. We urge

RUSHING & GUICE, P.L.L.C.
ATTORNEYS AT LAW
P.O. BOX 1925
BILOXI, MS 39533-1925

228 374-2313

the officials and residents of Ocean Springs to respect and protect the rights and access to treatment of the mentally ill.

33.

At the meeting, Ocean Springs once again entertained arguments in opposition to Psycamore which focused on matters not pertinent to the issue such as whether Psycamore accepted Medicare and Medicaid, infrastructure, parking, hours of operation, lighting, property values and crime. Ocean Springs voted to take the matter under advisement pending further review by the Board of Alderman.

34.

A special meeting of the City Council was called by Moran for November 29, 2011 wherein the Use Permit Application of Psycamore was placed on the Agenda. Alderman John Gill [hereinafter referred to as "Gill"] made the following statement:

> When we look at what is located in the C3 area off of 90 and Washington that is not located on or within a parking lot or has a service drive to access to major thoroughfare, we find a Single proprietor Law Office, Single Proprietor Psychologist office, Baptist Parsonage, and Single Family Residential. According to the definitions submitted and the description of the activities: A Partial Hospitalization program does not operate like a traditional office or clinic with a few patients scheduled during any giving hour - Coming and going throughout the day in relatively small numbers of cars. This program operates like a small factory working shifts or a school where there are mass comings and goings at specified times throughout the day - 5 days per week. These programs seek to have 8-10 clients in capacity coming and going at any given time. There will be a Morning Arrival, Lunch Break, Return from Lunch, Afternoon Departure, Evening Arrival and finally Evening Departure. At least 6 coordinated rush hours - 5 days a week. I have not included the doctors, specialists, assistants, administrative help, service people, and suppliers, but it adds up. This use will also have night time operations. This does not sound like the traditional operation of an office or clinic and it is certainly not similar to the single proprietor offices in the area that are low volume traffic generators.

> Although located in C-3, this site is not on a major road or highway. It is in the Marble Springs Historic District. It is directly adjacent to an R-1 residential district and shares its entrance and exit road with the residences. This is wholly different than the Singing River facility near the hospital. It does not put traffic through the Fort Bayou residential subdivision. This residential area has been in

RUSHING & GUICE, P.L.L.C.
ATTORNEYS AT LAW
P.O. BOX 1925
BILOXI, MS 39533-1925

228 374-2313

existence for over 100 years. Due to its age, the streets are not wide and our ROW in the area is substandard compared to our own Subdivision Regulations. Iberville has 30 foot ROW - the actual pavement varies in width from 19-20 feet, Ames Ave has 27 foot ROW - actual pavement is 17 feet wide. These are not appropriate for highway commercial activities with mass inflow and outflow. Look at our highway commercial roads - Washington, Hwy 90, and Government – All have over 50 feet of ROW. Even the Mental Health facility on Jackson Ave that is in R-1, that includes family counseling, is on a street with 60 feet of ROW. Our subdivision regs call for major streets and arterial streets to have 100 feet of ROW - and a pavement width of 63 feet. Secondary streets and collector streets are to have 60 feet of ROW and pavement width of 27. Minor streets, 50 ROW pavement 27and an alleyway to serve business - ROW 25, pavement 17. These roads are basically in the category of alleyways. If any on-street parking occurs, Ames is reduced to 8'6" and Iberville 11 feet.

We already allow mental health services in the neighborhood - so for the purposes of these findings and my motion, this has nothing to do with whether or not the use is for treating the mentally ill. It has everything to do with the Zoning not providing for a Psychiatric Partial Hospitalization and further it increases volume, congestion, and further that Partial Hospitalization is different than all the other operating businesses   located off 90 and 609, which are low volume office uses. The use would funnel that rush hour commercial traffic to Iberville eastbound or the emergency under pass at Fort Bayou Bridge and adds nighttime commercial activity due to the intended hours of service.

This all must be considered in relation to the unique and historic nature of this section of C-3. This section of C-3 is unlike any other C-3 area in the City. I would be having the exact same reservations if we were discussing a drive-in movie theater, a car dealership, a Taco Bell or a bus depot looking to locate in the area, a block off the major thoroughfares, on streets the size of alleys, with unfavorable entrance and exits to what is considered the busiest intersection on the Coast next to 90 and 49 in Gulfport. Commercial traffic should not be using Iberville Drive east as a through street to get to the light at Vermont/MILK.

It is our job to use good judgment in protecting the public welfare. Traffic congestion results in a number of problems, including economic costs due to delayed travel times, air pollution and accidents. Any on-street parking will make it difficult for emergency vehicles. As one roadway becomes congested, drivers may use others not necessarily intended for through traffic. Iberville, with its speed bumps, does not need to be the throughway for a facility serving Ocean Springs, as 90% of the City is east of this location.

RUSHING & GUICE, P.L.L.C.
ATTORNEYS AT LAW
P.O. BOX 1925
BILOXI, MS 39533-1925

228 374-2313

35.

For those reasons stated by Gill, as well as those stated in an October 24, 2011 Memorandum Brief submitted on behalf of Friends of Iberville Drive by their attorney, John Paul Barber, specifically sections 1, 2, 4, and 5, but specifically not adopting any arguments regarding violent crime therein, Motion was made by Gill and seconded by Alderman Cody to deny the use permit as applied for by Psycamore. Upon vote, Ocean Springs through its Board of Alderman voted 5 to 1 to deny the application of Psycamore with Aldermen Ross, Gill, McDonnell, Cody, and Denier voting aye and Alderman Dalgo voting nay.

36.

The aforementioned motion made by Gill skirted the issue before Ocean Springs - was Psycamore's proposed use similar to or not in conflict with those uses specifically listed in the zoning ordinance - and instead focused on irrelevant factors such as traffic, road measurements and hours of operation, and went as far as to liken Psycamore's business to a drive-in movie theater, a small factory, a car dealership, a bus depot and even a Taco Bell.

37.

The Minutes of the Special Call Meeting on November 29, 2011 were approved by Ocean Springs on December 20, 2011.

38.

Psycamore filed a Notice of Appeal and Bill of Exceptions in the Circuit Court of Jackson County, Mississippi on December 8, 2011, and the Circuit Court, after considering the written briefs and oral arguments of the parties, entered a 4 page Order on December 21, 2012 reversing the decision of Ocean Springs and finding that the decision of Ocean Springs in denying Psycamore a use permit was not supported by substantial evidence.

RUSHING & GUICE, P.L.L.C.
ATTORNEYS AT LAW
P.O. BOX 1925
BILOXI, MS 39533-1925

228 374-2313

Page **17** of **29**

39.

On January 17, 2013, Ocean Springs filed a Notice of Appeal in the Circuit Court action, appealing to the Mississippi Supreme Court from the Order entered on December 21, 2012. On October 31, 2013, after considering the written briefs and oral arguments of the parties, the Mississippi Supreme Court affirmed the Circuit Court concluding as follows:

> Because the city planning commission ignored its own definition, past practices, and all of the relevant evidence when it denied Psycamore's certificate of occupancy, we find that the denial was clearly arbitrary and capricious. Accordingly, we affirm the ruling of the Jackson County Circuit Court reversing the decision of the City, and we remand this case to the City for further proceedings consistent with this opinion.

40.

As this series of unfortunate events was unfolding, the United States Department of Justice (hereinafter "DOJ") began conducting an investigation of Ocean Springs for violations of Title II of the Americans with Disabilities Act of 1990 (hereinafter "ADA") as amended, 42 U.S.C. §§ 12131-12134 and its implementing regulation, 28 C.F.R. Part 35. The results of this investigation are set forth in a letter dated August 15, 2014 from the U. S. Department of Justice Civil Rights Division to Mayor Connie Moran, City of Ocean Springs. (See letter attached hereto as Exhibit A.)

41.

Title II of the ADA prohibits disability discrimination in all activities of local government entities, including zoning decisions. See 42 U.S.C. § 12132; 28 C.F.R. § 35.130. Ocean Springs is a public entity under the ADA and subject to the ADA's nondiscrimination mandate. See 42 U.S.C. § 12131; 28 C.F.R. § 35.104. This nondiscrimination mandate requires Ocean Springs to provide equal services, programs, and activities to entities that serve individuals with disabilities and to ensure that Ocean Springs' zoning decisions do not

RUSHING & GUICE, P.L.L.C.
ATTORNEYS AT LAW
P.O. BOX 1925
BILOXI, MS 39533-1925

228 374-2313

discriminate against individuals with disabilities and entities associated with them. See 28 C.F.R.

§ 35.130(b), (g). DOJ is authorized to investigate allegations of discrimination and to file a civil

action if the United States Attorney General finds a violation of the ADA. 42 U.S.C. § 12133; 28

C.F.R. Part 35, Subpart F.

42.

DOJ's investigation concluded that Ocean Springs discriminated against Psycamore, an

outpatient psychiatric treatment facility, because of the known actual and perceived mental

impairments of the patients treated there, and with whom Psycamore has a known association, in

violation of the ADA. Psycamore sought to operate in a zone allowing facilities for the

examination and treatment of human patients and should have been allowed to operate without

obtaining a use permit. But Ocean Springs denied Psycamore's certificate of occupancy

application, required it to seek a use permit, subjected it to public hearings, and denied its use

permit application-even though Psycamore' s proposed use was allowed under the City's zoning

ordinance. DOJ further recognized that the Mississippi Supreme Court found that Ocean

Springs' decision was arbitrary and capricious. City of Ocean Springs, Miss. v. Psycamare, LLC,

No. 2013-CA-00118-SCT, at 11 (Miss. Oct. 31, 2013).

43.

DOJ's investigation further concluded that Ocean Springs based its decision on

discriminatory beliefs, myths, and stereotypes about the types of patients with disabilities treated

by Psycamore and their mental disabilities and that Ocean Springs violated the ADA when it

denied Psycamore a certificate of occupancy, made it submit to a use permit process, and then

denied it a use permit-all on these illegal and discriminatory bases. DOJ determined that a court

enforceable agreement will be necessary: (i) to educate Ocean Springs and its officials on the

RUSHING & GUICE, P.L.L.C.
ATTORNEYS AT LAW
P.O. BOX 1925
BILOXI, MS 39533-1925

228 374-2313

requirements of the ADA; (ii) to compensate Psycamore and other aggrieved persons for injuries suffered as a result of Ocean Springs' violations of the ADA; and (iii) to reform Ocean Springs' zoning practices with respect to persons with disabilities and psychiatric treatment facilities, in order to prevent future violations of the ADA. DOJ stated that their letter is notice of their findings of fact and conclusions of law, and of the remediation that Ocean Springs must take to bring its policies, practices, and procedures into compliance with the ADA, and to remedy past violations. See 28 C.F.R. Part 35, Subpart F.

44.

DOJ's investigation specifically found that:

(a) Ocean Springs' zoning and land use activities are carried out by its Planning Department, Planning Commission, Mayor, and Board of Aldermen. Its Comprehensive Zoning Ordinance ("Zoning Ordinance") governs the zoning process and divides Ocean Springs into thirteen zoning districts, listing the permissible uses of property within the corresponding geographic areas.  Any occupant seeking to change the use of an existing structure must obtain either a certificate of occupancy or a use permit.

(b) When the proposed use is listed in the applicable district ordinance, Ocean Springs' Planning Department must issue a certificate of occupancy. If not, then a use permit must be obtained after public notice and hearing and approval of the Board of Aldermen and Mayor. A use permit should be granted if the proposed use is "similar to or not in conflict with those uses specifically permitted."

(c) Psycamore is a private, mental health service provider for high-functioning adults and adolescents with serious mental disorders and psychosocial impairments. Psycamore is licensed as an "acute partial hospitalization" program: a program that provides medical

RUSHING & GUICE, P.L.L.C.
ATTORNEYS AT LAW
P.O. BOX 1925
BILOXI, MS 39533-1925
—
228 374-2313

Page **20** of **29**

supervision, nursing services, structured therapeutic activities and intensive psychotherapy (individual, family, and/or group) to individuals who are experiencing a period of such acute distress that their ability to cope with normal life circumstances is severely impaired. Psycamore is designed particularly for individuals not in an inpatient setting or for those needing further services after being discharged from a hospital.

(d) Psycamore has offices in Flowood, Southaven, and Biloxi, Mississippi. At these facilities, it offers comprehensive treatment of major psychiatric disorders through intensive outpatient therapy programs with day and evening schedules. To be eligible for services, patients must have a psychiatric illness severe enough to interfere with daily function, but not to require hospitalization. In 2011, when it applied for a certificate of occupancy and use permit from Ocean Springs, approximately eighty percent of Psycamore's clients had depression as a primary diagnosis; others had anxiety, panic disorder, post-traumatic stress disorder, obsessive-compulsive disorder, and adjustment disorders. These mental impairments interfere with brain function, a major bodily function, and with patients' ability to perform various tasks of daily living.

(e) In August 2011, Psycamore attempted to open an outpatient psychiatric treatment facility in an existing building at 1101 Iberville Drive in Ocean Springs. Due to the actions of Ocean Springs, Psycamore terminated its lease at the end of January 2012, just five months later. For nearly two years thereafter, from February 2012 through September 2013, the property was for sale or lease.

(f) Iberville Drive features several businesses, as well as the Marble Springs Historic Park and homes. Since 1984, the property has been zoned C-3 highway commercial. The property is located near a law firm, a psychologist's office, and a realtor's office. There

RUSHING & GUICE, P.L.L.C.
ATTORNEYS AT LAW
P.O. BOX 1925
BILOXI, MS 39533-1925

228 374-2313

are also several bars, a tattoo parlor, a fast food restaurant, and a gas station not far from the property. The neighborhood to the east, beyond the property and the park, is zoned R-1 residential. The closest residential home is diagonally across the street, and the next closest home is across the public parking lot for the park. Prior uses of the property include an attorney's office and an insurance company. The property is currently being used as law offices.

(g) Psycamore leased Iberville Drive on August 1, 2011. On August 29, it posted a sign and ran advertisements about its proposed psychiatric treatment facility. The next day, it submitted an application for a certificate of occupancy for use as a "Psychiatric Partial Hospitalization" program. The application noted that it would operate Monday through Friday, with no session later than 8:00 p.m.

(h) In response, "Friends of Iberville Drive" formed to prevent Psycamore from opening at the property. A concern expressed by some was public safety due to the mental disabilities of Psycamore's patients. A flier was circulated publicly and to Ocean Springs' officials that depicted Psycamore as the psychiatric ward in the film, One Flew Over the Cuckoo's Nest.

(i) Ocean Springs repeatedly acted inconsistently with its zoning rules and usual practices. In September 2011, the Board of Aldermen held a meeting to hear public comments on Psycamore's certificate of occupancy application. Many comments focused on an alleged threat to property values and public safety posed by Psycamore's patients due to their actual or perceived mental impairments. Because of the concerns raised in the comments, by motion the Board of Aldermen instructed the Planning Department to research whether Psycamore's proposed use was allowed, and instructed the Planning Department

RUSHING & GUICE, P.L.L.C.
ATTORNEYS AT LAW
P.O. BOX 1925
BILOXI, MS 39533-1925

228 374-2313

Page **22** of **29**

not to make a decision as to whether Psycamore's proposed use was allowed by right, but only to make a recommendation to the Planning Commission and Board of Aldermen. The Board thus required Psycamore to go through the use permit application process, without the Planning Department first determining whether a certificate of occupancy should be issued by right for a legally conforming use. The Board of Alderman passed the motion over objection by the Planning Department. Accordingly, the Planning Department researched Psycamore's use, and issued a report and recommendation to the Planning Commission and Board of Aldermen.

(j) The Planning Department's Report recommended that "the Planning Commission find Psycamore to be a legal use within the C-3 Highway Commercial zoning district," because it is a "medical or paramedical clinic" as defined by the Zoning Ordinance. Consequently, a use permit was not needed, and a certificate of occupancy should have been issued. In the alternative, the report found that "Psycamore's requested use [was] similar to and not in conflict with" a medical or paramedical clinic - a use "specifically allowed in C-3 Highway Commercial." As a result, Ocean Springs should have issued Psycamore a use permit. The report also found that there was "no research to suggest that a psychiatric office or clinic of the proposed size and nature would have detrimental impacts on property values or public safety."

(k) Although Psycamore's proposed use - a medical or paramedical clinic - was permitted by right in the C-3 highway-commercial district, Ocean Springs required Psycamore to apply for a use permit, and go through the public notice and hearing process, which it did under protest. The Planning Department's Report was presented to the Planning Commission and Board of Aldermen at public hearings. At these hearings, the Planning Commission

RUSHING & GUICE, P.L.L.C.
ATTORNEYS AT LAW
P.O. BOX 1925
BILOXI, MS 39533-1925

228 374-2313

Page **23** of **29**

and Board of Aldermen also heard from proponents and opponents of Psycamore's use permit application. Opponents argued that Psycamore was not a permitted use and conflicted with other uses permitted in the zoning district because of the types of patients treated by Psycamore, who they alleged posed a threat to safety and would cause property values to decrease. Friends of Iberville Drive submitted a brief to Ocean Springs discussing the perceived dangers of people with mental health disorders, including generalizations, myths, and stereotypes about people with mental illness.

(l) Ocean Springs relied on the Friends of Iberville Drive brief and comments and, on November 29, 2011, voted to deny Psycamore's application for a use permit, citing traffic, the residential and historic nature of the area, and the substandard infrastructure on the street. Ocean Springs expressly adopted the arguments in the Friends of Iberville Drive brief - including specifically citing those sections of the brief that focused on the threat of violence, crime, and substance abuse posed by Psycamore's patients due to mental illness - but simultaneously stating that it was "not adopting any arguments regarding violent crime" therein.

(m) Ocean Springs' denial of Psycamore's certificate of occupancy and use permit applications - based on impermissible assumptions and unfounded stereotypes about Psycamore's patients because of their disabilities - violates the ADA. Psycamore is therefore an aggrieved person under the ADA, as are those individuals and entities harmed by Ocean Springs' discriminatory actions. See 42 U.S.C. § 12133; see also 29 U.S.C. § 794a (the remedies, procedures, and rights of which are incorporated into Title II by reference); 42 U.S.C. §§ 2000d-2, 2000e-5 (incorporated to 29 U.S.C. § 794a by reference).

RUSHING & GUICE, P.L.L.C.
ATTORNEYS AT LAW
P.O. BOX 1925
BILOXI, MS 39533-1925
228 374-2313

Page **24** of 29

(n) Due to the discriminatory actions of Ocean Springs, Psycamore was prevented from opening a clinic at Iberville Drive and was delayed in opening its third clinic (now located in Biloxi) by five to six months. Ocean Springs ignored its own definition, past practices, and relevant evidence when it required Psycamore to go through the use permit hearing process and again when it denied Psycamore's application for a use permit. As a result, Ocean Springs created a precedent for singling out certain medical facilities that treat patients with mental disabilities and applying a heightened requirement for them to locate in Ocean Springs. Ocean Springs' actions also perpetuated the stigma surrounding mental health disorders.

(o) Due to its professional association with persons with disabilities, Psycamore is a covered entity protected by the ADA, as are other persons or entities associated with Psycamore and its patients. See 42 U.S.C. § 12133; 28 C.F.R. § 35. 130(g); see also 28 C.F.R., pt. 35, App. A. Ocean Springs discriminated against Psycamore because of its association with individuals with disabilities and, in the process, prevented Iberville Drive from being rented for a use permitted in the C-3 highway-commercial zoning district based on discriminatory reasons. Ocean Springs' provided unequal services to, and made a decision that had the effect of discriminating against, Psycamore (and those associated with Psycamore) because it serves individuals with known disabilities. Ocean Springs' thus violated the ADA when it denied Psycamore's certificate of occupancy and use permit applications.

45.

To remedy the aforementioned federal violations, DOJ has instructed Ocean Springs that it must do the following at a minimum:

RUSHING & GUICE, P.L.L.C.
ATTORNEYS AT LAW
P.O. BOX 1925
BILOXI, MS 39533-1925

228 374-2313

Page **25** of **29**

(a) Adopt a non-discrimination policy stating that Ocean Springs will not engage in any act or practice, directly or through contracting, licensing, or other arrangements, that has the purpose or effect of unlawfully discriminating against any person with a disability, or any person or entity associated with a person with a disability, in violation of Title II of the ADA - or otherwise discriminate on the basis of disability in violation of the ADA.

(b) Train all Ocean Springs staff, volunteers, administrators, and officials involved in zoning - including the Planning Department, Planning Commission, Board of Aldermen, and Mayor - on the requirements of the ADA and the rights of ill individuals with disabilities, including the affirmative obligation of public entities to provide equal services, programs, and activities to entities that serve individuals with disabilities and to ensure that Ocean Springs' zoning decisions do not discriminate against individuals with disabilities and entities associated with them.

(c) Grant Psycamore a certificate of occupancy (and use permit if necessary) to operate a partial hospitalization program, or other psychiatric treatment facility, in any C-3 or C-4 zoned district in Ocean Springs, including the property located at 1101 Iberville Drive, should Psycamore choose to open in these districts in the City.

(d) For any land use request involving persons with disabilities or an entity associated with them that Ocean Springs denies or grants with conditions in the next five years, make written findings specifying the basis for the denial or the conditions imposed.

(e) Hire a full-time ADA Coordinator to carry out Ocean Springs' responsibility for compliance with Title II of the ADA and its implementing regulation.

(f) Take other affirmative action to prevent discrimination based on disability by Ocean Springs.

RUSHING & GUICE, P.L.L.C.
ATTORNEYS AT LAW
P.O. BOX 1925
BILOXI, MS 39533-1925

228 374-2313

(g) Pay compensatory damages, including damages for out-of-pocket expenses and lost profits, to Psycamore and other aggrieved persons in an appropriate amount for injuries suffered as the result of Ocean Springs' failure to comply with the requirements of Title II of the ADA, 42 U.S.C. §§ 12131-12134, and its implementing regulation, 28 C.F.R. Part 35.

46.

Further, DOJ advised Psycamore that it has the statutory right to file a private suit pursuant to Section 203 of the ADA, 42 U.S.C. § 12133.

47.

Psycamore hereby adopts and asserts as its causes of action against Ocean Springs, all findings as set forth by DOJ referenced hereinabove and as set forth in Exhibit A hereto.

## DAMAGES

48.

The actions, inactions, breaches and acts and violations of duty by Ocean Springs were the proximate cause of damages suffered by Psycamore. That at all times mentioned herein, damages suffered by Psycamore were directly and proximately caused by the actions, inactions, breaches of duties and negligence of Ocean Springs.

49.

Taking into consideration, damages of every nature and kind which Psycamore may recover from Ocean Springs herein, Psycamore has been damaged in an amount to be proven in trial, but not less than $814,305.02 [Eight Hundred-Fourteen-Thousand-Three Hundred five Dollars and 02 cents].

RUSHING & GUICE, P.L.L.C.
ATTORNEYS AT LAW
P.O. BOX 1925
BILOXI, MS 39533-1925
228 374-2313

## ATTORNEYS FEES AND EXPENSES

50.

Psycamore incorporates by reference the allegations contained in paragraphs 1 through 49 above.

51.

A prevailing party under the ADA is entitled to an award of fees for all time that was reasonably expended in pursuit of the ultimate result achieved.  42 U.S.C.A. § 12205. As a result of the actions of Ocean Springs herein, Defendant Ocean Springs should be liable to Psycamore for all of its attorney's fees, costs and expenses incurred, in attempting to right the wrong caused by Ocean Springs, which are continuing in nature.

## PREJUDMENT INTEREST

52.

Psycamore is due prejudgment interest on all damages incurred.

## PRAYER

WHEREFORE, Premises Considered, Psycamore prays for the following relief:

1. That this Complaint be filed, docketed and process issued and served upon Ocean Springs.
2. That Psycamore be granted a trial by jury.
3. That a judgment be rendered in favor of Psycamore and against Ocean Springs in an amount be proven in trial, but not less than $750,000.00.
4. That a judgment be rendered in favor of Psycamore and against Ocean Springs for Psycamore's attorneys' fees and expenses.
5. That Psycamore be awarded prejudgment interest.
6. That the judgment should bear interest at the legal rate.
7. That the judgment should be entered in favor of Psycamore and against Ocean Springs for all costs of this cause.

RUSHING & GUICE, P.L.L.C.
ATTORNEYS AT LAW
P.O. BOX 1925
BILOXI, MS 39533-1925

228 374-2313

Page **28** of **29**

8.   That this Court award such other relief as is proper in the premises.

Respectfully submitted, this the 29th day of August, 2014.

PSYCAMORE, L.L.C., Plaintiff

BY:

WILLIAM LEE GUICE III
MS BAR NO. 5059
MARIA M. COBB
MS BAR NO. 9951
RUSHING & GUICE, P.L.L.C.
P.O. BOX 1925
BILOXI, MS 39533-1925
PHONE:       228-374-2313
FAX:   228-875-5987
bguice@rushingguice.com
mcobb@rushingguice.com

RUSHING & GUICE, P.L.L.C.
ATTORNEYS AT LAW
P.O. BOX 1925
BILOXI, MS 39533-1925

228 374-2313

w:\8906\working\p\complaint final.docx

Page **29** of **29**